```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**MICHAEL PATRICK GIAMBALVO,**

    **Plaintiff,**

**v.**     //     **CIVIL ACTION NO. 1:11CV14**
                               **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

    **Defendant.**

### ORDER ADOPTING REPORT AND RECOMMENDATION IN PART

Pending before the Court is the Magistrate Judge's Report and Recommendation concerning the pro se complaint filed by Michael Patrick Giambalvo. For the reasons discussed below, the Court **ADOPTS-IN-PART** the Magistrate Judge's Report and Recommendation, **DENIES** the defendant's motion to dismiss **WITHOUT PREJUDICE, GRANTS** the plaintiff **LEAVE** to comply with the prerequisites of § 55-7B-6(b), **DENIES** the plaintiff's motion for a jury trial, and **REFERS** this case to Magistrate Judge Seibert for further proceedings consistent with this opinion.

**I.**

Pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq, on February 10, 2011, the pro se plaintiff, Michael Patrick Giambalvo ("Giambalvo"), filed this action against the United States (the "government"), alleging medical malpractice claims under the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1, et seq (dkt. no. 1). Giambalvo

**GIAMBALVO v. UNITED STATES**                                          **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

contends that, while an inmate at United States Penitentiary Hazelton in Bruceton Mills, West Virginia ("U.S.P. Hazelton"), he received improper medical care for an ingrown toenail. He seeks monetary damages and injunctive relief for the injuries he allegedly suffered.

    The Court referred this matter to United States Magistrate Judge James E. Seibert for initial screening and a report and recommendation in accordance with LR PL P 2. On June 19, 2011, Giambalvo filed a motion demanding a jury trial (dkt. no. 19). On October 25, 2011, the United States moved to dismiss Giambalvo's lawsuit (dkt. no. 34), claiming he had failed to comply with the pre-suit requirements of § 55-7B-6. Specifically, the government argued that Giambalvo failed to file a qualified expert's screening certificate of merit thirty days before filing suit.

    After a careful review of the matter, Magistrate Judge Seibert issued a Report and Recommendation ("R&R") on January 10, 2012, which recommended denying the defendant's motion to dismiss and granting the plaintiff's motion for a jury trial (dkt. no. 60). Pursuant to § 55-7B-6(c), and <u>Johnson v. United States</u>, 394 F. Supp. 2d, 854, 858 (S.D.W. Va. 2005), Magistrate Judge Seibert determined that a certificate of merit was not required in this

**GIAMBALVO v. UNITED STATES**                                                   **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

case, and concluded Giambalvo had complied with the statutory prerequisites to file his malpractice action.

On January 24, 2012, the United States filed objections to the R&R, in which it argued that the exception to the certificate of merit requirement of the MPLA does not apply to Giambalvo's case, and he is therefore barred from bringing this suit due to his failure to comply with the statutory prerequisites of § 55-7B-6. The government also argued that the FTCA requires Giambalvo's claim to be tried by the Court, not a jury.

**II.**

The record of events preceding Giambalvo's filing of this lawsuit is extensive, but certain facts are particularly relevant to an analysis of the government's motion. As it must when ruling on a motion to dismiss, the Court views these facts in the light most favorable to the non-movant, Giambalvo. Walker v. True, 399 F.3d 315, 319 (4th Cir. 2005).

**A.**

On November 30, 2007, while Giambalvo was incarcerated at U.S.P. Hazelton, he sought treatment from United States Bureau of Prisons ("BOP") medical personnel for an ingrown toenail on the fourth toe of his right foot. A physician's assistant, Michael Azumah ("Azumah"), instructed Giambalvo to sign a blank

**GIAMBALVO v. UNITED STATES**                                                       **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

authorization form for what Giambalvo understood would be only an injection of local anesthetic.

Without first obtaining informed consent from Giambalvo, Azumah removed the entire toenail by pulling it out at its root. Afterward, he wrapped Giambalvo's toe in a dressing and instructed him not to disturb the dressing for forty-eight hours. According to Giambalvo, the bandage was wrapped too tightly and blocked circulation in his toe. As a consequence, in the months following removal of his toenail, he suffered several complications, including skin breakdown, pain, swelling, tissue death, necrosis, and a methicillin-resistant staphylococcus aureus ("MRSA") infection that ultimately spread into the bones in his foot, causing osteomyelitis, inflammation, and permanent nerve damage.

Over a four month period, BOP medical personnel examined and treated Giambalvo, who received various forms of treatment, including x-rays, a wound culture, and prescriptions for ibuprofen, antibiotics, toradol, ciprofloxacin, and capsaicin cream. On several occasions, however, the BOP denied Giambalvo treatment, and, despite more than one recommendation that Giambalvo needed an orthopedic consultation, refused him permission to see a specialist.

**GIAMBALVO v. UNITED STATES**                                              **1:11CV14**

### ORDER ADOPTING REPORT AND RECOMMENDATION IN PART

When Giambalvo finally saw an orthopedist, Dr. Stoll, on March 26, 2008, Dr. Stoll diagnosed MRSA and ordered further x-rays and a follow-up visit. After two sets of x-rays yielded conflicting results, prison officials denied Giambalvo's requests for further consultation, and he was never allowed to see Dr. Stoll again.

On September 18, 2008, the BOP transferred Giambalvo to the Federal Correctional Institution at Otisville, New York, where a podiatrist named Dr. Eric Kaplan assessed his condition and ordered an MRI. That MRI revealed inflammation and fluid build-up in Giambalvo's foot. Following further treatment, Dr. Kaplan informed Giambalvo on March 4, 2009 that he had possible osteomyelitis, a form of nerve damage resulting from a too-tight bandage and the follow-up care he had received after his toenail removal. He told Giambalvo his only likely options were pain management or amputation of the toe. As a result of Dr. Kaplan's assessment, the BOP transferred Giambalvo to the Federal Medical Center in Butner, North Carolina in September of 2009, where he remains.

**B.**

Giambalvo's lawsuit alleges that medical personnel employed by the BOP improperly treated his ingrown toenail by wrapping his toe too tightly, and by then failing to adequately treat the resulting complications. He claims that he now suffers chronic pain, is

**GIAMBALVO v. UNITED STATES**                                                                 **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

unable to bear weight on his right foot, requires the assistance of custom orthotics and a walker or cane, and undergoes extensive ongoing medical treatment. He seeks monetary damages and also an injunction to require the BOP to provide him with regular semi-annual podiatric examinations.

Pursuant to 28 C.F.R. § 542.13, Giambalvo first attempted to informally resolve his claims through administrative remedies within the BOP. He filed three administrative complaints on January 29, 2008, March 13, 2008, and August 11, 2009. Thus, there is no dispute that he exhausted his administrative remedies prior to commencing this lawsuit.

Pursuant to the FTCA, Giambalvo filed a timely complaint in this Court on February 10, 2011. Attached to that complaint was a document entitled, "In lieu of Medical Screening Certificate of Merit. W. Va. Code § 55-7B-6(c)" (dkt. no. 1-5), in which Giambalvo asserted that he did not need to submit an expert's screening certificate of merit. Invoking the doctrine of <u>res ipsa loquitur</u>, he argued that negligence by BOP medical personnel was the only reasonable inference to be drawn from the circumstances of his injury.

Three months after filing his complaint, on May 19, 2011, Giambalvo filed another similar document styled, "Notice of Fault:

**GIAMBALVO v. UNITED STATES**                                          **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

Pre-Suit Notice, In Compliance with [W. Va.] Code § 55-7B-6(c)" (dkt. no. 14), which repeated his arguments for proceeding without a certificate of merit and referenced the allegations described in his administrative claims.

    Based on all this, the questions before the Court are whether Giambalvo properly invoked the exception in W.Va. Code § 55-7B-6(c), and, if he did not, what effect does his failure to do so have on his case?

### III.

    The government argues that, by failing to serve it with a screening certificate of merit at least thirty days prior to filing suit, Giambalvo is barred from litigating this malpractice lawsuit. It contends Giambalvo was not entitled to invoke subsection 6(c) of the MPLA, which exempts a plaintiff from filing a certificate of merit when his claim is based upon a well-established legal theory of liability that does not require expert testimony to support a breach of the applicable standard of care. Giambalvo counters that his cause of action fits neatly within the four corners of that exception and, by filing the document entitled "In Lieu of Medical Screening of Merit" with his complaint, he satisfied the necessary statutory prerequisites.

**GIAMBALVO v. UNITED STATES**  **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

**A.**

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to state a plausible claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). Although the Court must accept factual allegations in a complaint as true, it need not accept the plaintiffs' legal conclusions. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

**B.**

The statutory prerequisites of § 55-7B-6, with which a plaintiff must comply, in pertinent part, provide:

> At least thirty days prior to the filing of a medical professional liability action against a healthcare provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death.

**GIAMBALVO v. UNITED STATES**                                                                 **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

W. Va. Code § 55-7B-6(b).

Giambalvo contends his case falls within the following exception to subsection 6(b):

> Notwithstanding any provision of this code, if a claimant or his counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

Id. § 55-7B-6(c). He argues that his "action is based upon a well-established legal theory of liability" for which an expert is not required to establish a breach of the standard of care, and that he need only file a "statement specifically setting forth the basis of the alleged liability of the healthcare provider," which is what he did when he filed his administrative grievances with the BOP. (Dkt. No. 51-1 at 6 (citing W. Va. Code § 55-7B-6(c))). In those grievances, and also in the document entitled "In Lieu of Medical Screening Certificate of Merit," Giambalvo contends that he set out his theory that Azumah bandaged his toe too tightly, resulting in a loss of circulation and, ultimately, nerve damage and infection in his toe and foot. (Dkt. No. 1-5).

**GIAMBALVO v. UNITED STATES**                                          **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

**C.**

Giambalvo's argument relies heavily on the holding in Johnson v. United States, 394 F. Supp. 2d 854, 858 (S.D.W. Va. 2005), where Judge Chambers determined that the plaintiff's statement in his administrative grievance, that his doctor had "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection," set forth a well-established theory of liability sufficient to alert the defendant about the precise nature of his claim, and thus met the requirements of § 55-7B-6(c). Giambalvo asserts that his situation is similar to the facts present in Johnson.

Johnson, however, is a rare exception to "the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses." See Banfi v. Am. Hosp. for Rehab, 529 S.E.2d 600, 605 (W. Va. 2000). A court shall require expert testimony except where the "lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Id. Unlike the facts in Johnson, those here do not present "noncomplex matters of diagnosis and treatment within the

**GIAMBALVO v. UNITED STATES** 1:11CV14

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

understanding of lay jurors by resort to common knowledge and experience."

Giambalvo's allegation that Azumah bandaged his toe too tightly, causing circulatory problems, necrosis, MRSA, and, ultimately, osteomyelitis, undoubtedly will require expert testimony to establish the applicable standard of care and assist the jury in determining whether Azumah's care deviated from that standard and proximately caused Giambalvo's injuries. See O'Neil v. United States, No. 5:07CV358, 2008 WL 906470, at *5 (S.D.W. Va. Mar. 31, 2008) (finding that the plaintiff was not excused from filing a certificate of merit because the treatment and diagnosis of Graves disease, hyperthyrodism, congestive heart failure, and cardiomyopathy are not within the understanding of lay jurors by resort to common knowledge and experience).

Questions focused on whether Azumah sufficiently informed Giambalvo of the intended course of treatment for his toenail, whether he properly applied the bandage to Giambalvo's toe following removal of his toenail, whether he followed up appropriately when Giambalvo complained of pain, and whether any or all of Giambalvo's ensuing complications were proximately caused by Azumah's treatment, will require

**GIAMBALVO v. UNITED STATES**                                                **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

testimony by a health care expert qualified to establish the appropriate standard of care and any deviation from that standard. See Morrell v. United States, No. 5:05CV171, 2007 U.S. Dist. LEXIS 27286 (N.D.W. Va. Apr. 12, 2007) (Stamp, J.) (finding that the plaintiff was not excused from filing a certificate of merit because he had not established the applicable standard of care for the treatment of a knee injury). When such expert testimony is required, a plaintiff may not circumvent the requirement of filing a certificate of merit simply by filing an administrative grievance. O'Neil, 2008 WL 906470, at *5.

     In his R&R, Magistrate Judge Seibert concluded that Dr. Reginald Hall's comments in an "Administrative Note" attached to the complaint sufficiently grounded Giambalvo's claims in a well-established theory of liability. While Dr. Hall opined that Giambalvo's injuries possibly could have resulted from an extremely tight dressing, he also conceded that he had not reviewed pertinent medical records and any opinion "would only be conjecture on [his] part." (Dkt. Nos. 1-7 at 3, 14-3 at 1-2). Those comments demonstrate that the appropriate standard of care in this case is not clear, and that Giambalvo will need expert testimony to advance his theory of liability.

**GIAMBALVO v. UNITED STATES**                                                  **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

    Moreover, Giambalvo's reliance on the doctrine of res ipsa loquitur lacks merit. As noted, his claims involve matters of causation and permanent injury that can only be established through expert testimony. Under West Virginia law, a plaintiff may not invoke the doctrine of res ipsa loquitur under such circumstances. See Neary v. Charleston Area Med. Ctr., 460 S.E.2d 464, 467 (W. Va. 1995). Accordingly, Giambalvo cannot proceed under § 55-7B-6(c), and thus has not satisfied the pre-suit requirements of the MPLA.

### IV.

    That Giambalvo has not satisfied these pre-suit requirements, however, does not warrant dismissal of his case. Although some district courts have held that the requirements of § 55-7B-6 are substantive rather than procedural, and have dismissed cases where the plaintiff failed to file a certificate of merit, see O'Neil, 2008 WL 906470, at *5; and Stanley v. United States, 321 F. Supp. 2d 805, 806-07 (N.D.W. Va. 2004), a recent opinion by the Supreme Court of Appeals of West Virginia concludes otherwise.

    In Westmoreland v. Vaidya, 664 S.E.2d 90, 96 (W. Va. 2008), West Virginia's highest court considered the statutory purposes of § 55-7B-6 and held that a plaintiff's

13

**GIAMBALVO v. UNITED STATES** 1:11CV14

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

noncompliance with the pre-suit requirements of § 55-7B-6(b) constituted a procedural defect which did not warrant dismissal of his case. Noting that the two-fold intent of the MPLA is to prevent the filing of frivolous law suits and to promote the pre-suit resolution of non-frivolous medical malpractice claims, Westmoreland observed that "a principal consideration before a court reviewing a claim of insufficiency in a notice or certificate should be whether a party challenging or defending the sufficiency of a notice and certificate has demonstrated a good faith and reasonable effort to further the statutory purposes." Id. Finding it significant that the plaintiff had proceeded in a good faith belief that he could litigate his case under the exception contained in subsection 6(c), Westmoreland concluded that the plaintiff's failure to file a certificate of merit was a procedural error, and that he should be afforded a reasonable amount of time to fulfill the statutory pre-suit requirements prior to dismissal of his case. Id. at 96, 97.

Like the plaintiff in Westmoreland, Giambalvo has demonstrated "a good faith and reasonable effort" to comply with the requirements of § 55-7B-6. See id. at 96. As evidenced by the filing of his document "In Lieu of Medical

14

**GIAMBALVO v. UNITED STATES**                                    **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

Screening Certificate of Merit," he believed, albeit erroneously, that his claim was based upon a well-established theory of liability that entitled him to rely on the exception in subsection 6(c). To dismiss his pro se complaint based upon a misunderstanding of his procedural obligations would constitute "a severe sanction which runs counter to the general objective of disposing cases on the merit." Id. at 97 (citing Dimon v. Mansy, 479 S.E.2d 339, 344-45 (W. Va. 1996)). Giambalvo thus should be afforded a reasonable opportunity to comply with the pre-suit requirements of § 55-7B-6.

**V.**

Turning next to the R&R's recommendation that Giambalvo is entitled to a jury trial, the government's argument that, under the FTCA, he is not entitled to a trial by jury is persuasive. Pursuant to 28 U.S.C. § 2402, "any action under § 1346, shall be tried by the court without a jury." The only exception to this mandate is for claims concerning federal tax collection. Because Giambalvo brought his claims against the United States under § 1346, and because such claims do not fall within the exception to § 2402, he is not entitled to a trial by jury.

**GIAMBALVO v. UNITED STATES**                                    **1:11CV14**

**ORDER ADOPTING REPORT AND RECOMMENDATION IN PART**

**VI.**

For the reasons discussed, the Court:

1. **ADOPTS** the Report and Recommendation **IN PART** (dkt. no. 60);

2. **DENIES** the United States's Motion to Dismiss **WITHOUT PREJUDICE** (dkt. no. 34);

3. **DENIES** Giambalvo's motion for a jury trial (dkt. no. 19);

4. **GRANTS** Giambalvo **LEAVE** to secure and file a medical screening certificate of merit with the Court within ninety (90) days following entry of this Order; and

4. **REFERS** this case to Magistrate Judge Seibert for further proceedings consistent with this Opinion and also **DIRECTS** him to reconsider Giambalvo's motion for appointed counsel (dkt. no. 61).

It is so **ORDERED**.

The Court directs the Clerk of Court to transmit copies of this order to counsel of record and to the pro se plaintiff, certified mail, return receipt requested.

Dated: March 22, 2012

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE