IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL PATRICK GIAMBALVO,

    Plaintiff,

v.                                Civil Action No. 1:11cv14

UNITED STATES OF AMERICA,

    Defendant.

**PLAINTIFF'S MOTION TO INCREASE *PRO SE* ADMINISTRATIVE CLAIM AMOUNT FILED AGAINST THE UNITED STATES OF AMERICA OR PERMIT RECOVERY IN EXCESS OF *PRO SE* ADMINISTRATIVE CLAIM**

      Now comes the plaintiff, Michael Giambalvo, by counsel, Jay T. McCamic, and moves this Court for entry of an Order Pursuant to 28 USC §2675(b) allowing Plaintiff to increase the amount of the claim he is seeking against the United States of America. Plaintiff should be allowed to amend his Administrative Claim in an amount in excess of that is set forth in Plaintiff's Administrative Claim presented to the Government on February 10, 2011. Plaintiff asserts that newly discovered evidence has come to light after the filing of the Administrative Claim, which was not nor could it have been reasonably discoverable at the time of the original filing of the Administrative Claim or that intervening facts have occurred since the filing of the Administrative Claim that would warrant an increase in the amount of the claim and permit the plaintiff to seek additional compensation in this matter.

### *Standard Of Review*

On February 10, 2011, the plaintiff filed his *pro* se Administrative Complaint in this matter seeking damages in the total amount of $2,000,000.00. Generally, damages sought in a suit brought under the Federal Tort Claims Act are limited to the amount of the Administrative Claim. See 28 U.S.C. §2675. However, within the statute is an exception.  A plaintiff may recover beyond this amount if "the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. §2675(b). The Plaintiff bears the burden of proving the existence of newly discovered evidence and/or proof of intervening facts. See *Kielwein v. United States*, 540 F.2d 675, 680 (4th Cir. 1976).

### *Statement Of Relevant Facts*

The *pro se* Administrative Claim (Doc.1 Page ID #1-138) was filed by the plaintiff with a number of exhibits attached which supplemented the details of his claim.  Within the claim itself is noted at Page ID #9 that he had previously filed a claim for $1,000,000 and had received no response and therefore "deemed claim denied."  This allegation was admitted by the government at least to the extent that the plaintiff had exhausted his administrative remedies.

Page ID #9 through Page ID #38 makes factual allegations entitled "Statement of Claim."  He has made factual allegations that set out in chronological fashion a number of specific allegations, many of which cite exhibits that are attached (Page ID #52 through Page ID #138)  Following the Statement of Claim allegations, the claim the consists of three counts.

Count One alleges *inter alia* medical malpractice, failure to obtain informed consent, allowing practitioners without proper qualifications to preform surgical procedures, along with other specific deviations of the standard of care-type allegations. At the conclusion of Count One at Page ID #43, the plaintiff demands judgment against the defendant as to Count One in the sum of $1,000,000, cost of suit, post-judgment interest, and such other relief that the Court may deem proper.

Count Two alleges *inter alia* that he will require in the future…possible amputation of toe, on the right foot, and removal of nerves, along with pain management services and medications, and physical therapy….and despite the need for actual treatment, surgery, ect. [sic], plaintiff has not received any actual treatment to repair injury or surgery to releave [sic] plaintiff from the severe pain he endures on a daily basis…Plaintiff demands judgment by way of injunctive relief seeking to have the defendant arrange for regular…evaluations by a podiatrist, cost of suit, such other relief the Court may deem just and proper.

Count Three alleges *inter alia* malpractice or a deviation below the standard of care and lists a number of general damages suffered by the plaintiff to include mental and emotional distress, pain and suffering, humiliation, etc. At the conclusion of Count Three at Page ID #47, the plaintiff demands judgment against the defendant as to Count Three in the sum of $1,000,000, cost of suit, and such other relief that the Court may deem proper.

All of the counts re-allege the preceding paragraphs of the count before it and allege a proximate cause connection between the alleged factual allegations and the injury allegations contained therein. The total amount of damages requested was

$2,000,000 in addition to cost of suit, post-judgment interest, injunctive relief, and such other relief the court may deem just and proper.

As recounted throughout the factual allegations in the administrative claim and as are discussed in numerous medical records, it is clear that the plaintiff has suffered severe injury and that he alleges a proximate cause of the injury to be the malpractice of the defendant.  It is also clear that he reasonably believed that surgical intervention would provide him with pain relief. The medical and other records are replete with what the plaintiff's belief was as to his situation and what he thought would relieve him of the agony of his injury.  The records also indicate that many of his medical providers shared that belief in whole or in part.  The plaintiff in order to relieve his pain repeatedly sought to have an amputation of part or all of his affected toes.

1. On 03/04/09 Plaintiff was seen by outside contracted podiatrist and was advised "there is not much I can do at this point except for pain management as an alternative to amputation of your toe."  The plaintiff believed that his choices were "pain management or amputation of his toe." (See Attachment A, Complaint at Page ID 132 Ex. E-2)

2. On 07/22/09 a pharmacist discussed the amputation of the plaintiff's toe as an alternative to "chronic narcotic use." (See Attachment B, Bates 162-163)

3. On 08/11/09 the plaintiff again discussed at length with a pharmacist about amputation of toe and that it might be the best route as opposed to chronic narcotic use. (See Attachment C, Bates 154-155)

4. Again on 09/03/09 it was discussed at length with a pharmacist about the amputation of the toe and patient agreed that it might be the best route as opposed to chronic narcotic use. (See Attachment D, Bates 140-141)

4

5. On 04/30/10 the plaintiff was seen and the benefits and complications with toe amputation were discussed and the plaintiff wanted to proceed with the amputation. He was scheduled for follow up in 6 weeks to assess status of possible toe amputation. (See Attachment E, Bates 632)

6. On 06/08/10 the plaintiff requested pain medication (fentanyl) indicating that Dr. Ramsey had cancelled his fentanyl patch and the plaintiff stated "just shoot me and get it over with." An ortho follow up had been scheduled and plaintiff believed that that would be the first step to getting his toe amputated and getting pain relief. (See Attachment F, Bates 959)

7. On 07/06/10 in a long note, Dr. Reginald Hall discusses his suspicions that the plaintiff may have CRPS/RSD and his concerns about surgical intervention. Dr. Hall states "Amputation has been mentioned as an option however it has been my experience that this is not curative and it can be difficult to handle both nerve stumps to that they are not a source of continued pain… I need to talk with several medical providers before proceeding any further. (See Attachment G, Bates 590-591)

8. On 10/28/10 an outside orthopedic consult was performed at Triangle Orthopedic recommending excision of the interdigital nerve and that "Dr. Hall can perform interdigital nerve excision in an excellent fashion." (See Attachment H, Bates 861-863)

9. On 11/15/10 an administrative note by Lori Brooks, PA indicates that a "nerve ablation" was to be scheduled at Triangle Orthopedics. (See Attachment I, Bates 521-522)

10. On 11/17/10 approval of "excision of interdigital nerve" was noted. (See Attachment J, Bates 856)

11.     On 12/14/10 a note indicated that the surgery was not scheduled because of Triangle Orthopedic not having any opening in the next two weeks.  (See Attachment K, Bates 511)

12.     On 12/28/10 Lori Brooks, PA notes that the "town trip" was cancelled as Triangle Orthopedics is not going to perform the nerve ablation. (See Attachment L, Bates 500-501)

Throughout this time the plaintiff became very depressed and upset that his surgical procedure involving amputation of a toe or toes and/or surgical removal of nerves in his foot that he believed would relieve his pain had been unjustly denied to him.

On 02/10/11 the plaintiff filed his Administration Claim, Doc. 1 Page ID #1-138.

After the aforementioned Administrative Complaint was filed the plaintiff was further informed that Triangle Orthopedics would not give a medical reason for not doing the surgery. (See Attachment M, Bates 1196)

A letter dated 03/18/11 to plaintiff from Dr. Richard Bruch at Triangle Orthopedic attempted to explain to the plaintiff why Triangle didn't do the surgery.

> I did not schedule any follow up appointment for you as my consulting duties to evaluate you and provide my treatment recommendations had concluded.
>
> Although our office was contacted for the purpose of scheduling the recommended surgery, it was and is my belief that Dr. Hall is more than qualified to perform the recommended surgery and the scheduler was advised of the same.

(See Attachment N, letter)

At the time the Administrative Claim was filed in this matter, Michael Giambalvo had not had the benefit of a full independent review of his medical records and an

independent medical examination by a doctor not affiliated with the BOP.  As discussed above, he had been seen by various BOP medical personnel and some outside doctors on contract. Sadly, the evidence will show that it was not until Michael was discharged from Butner to the streets of Philadelphia that he began to learn about his true prognosis, he was lucky to get referred to such medical facilities as Mary Howard Health Center, Moss Rehab, and Einstein Health Services, who began to regulate his pain medications and deal with his pain management and related mental stress. And is wasn't until Dr. Ronald Long reviewed his case in detail and shared with him his opinion in detail confirming the opinion of other medical providers in Philadelphia, that he truly understood his plight. He now realized not only that he had a severe nerve disease most often called "Complex Regional Pain Syndrome," but more importantly he realized that this very painful and debilitating condition was permanent and was never going to be cured by any type of surgery. Michael was stunned.  For him the logic of amputating the affected part of his foot and removing the problem and his fight to get that procedure performed was for naught. As he learned when he dealt with doctors outside the BOP he has a lifetime of pain ahead of him. The more he learned the more depressed he got.

     The life planner Daniel Baierl working with the treatment recommendations put detail to what that life would be like and what it would conservatively cost. Daniel Selby reduced the figures to present value.

## LEGAL DISCUSSION

There exists nationally a split among the federal circuits as to the exact definition of "newly discovered evidence" or "intervening facts" in order to increase in the amount of damages from that originally requested by a plaintiff during the presentation of an Administrative Claim under 28 U.S.C. §2675.  However, the Fourth Circuit Court of

Appeals takes "the approach more favorable to the injured party" holding that a plaintiff in such a circumstance does not have to prove that the new evidence was not "reasonably discoverable" but instead is only required to prove the lesser standard of showing that the newly discovered evidence had not been discovered at the time the Administrative Claim was filed. *Spivey v. United States*, 912 F.2d 80 (4th Cir. 1990) and *Murphy v. United States*, 833 F.Supp. 1199, 1203 (E.D. Va. 1993). *See also, Adkins v. United States*, 990 F. Supp. 2d 621 (S.D.W. Va. 2014) where medical malpractice regarding the failure to diagnose and treat pre-natal blood incompatibility condition was alleged. In *Adkins*, Plaintiff moved to increase administrative claim from $6,300,000 to $21,927,334 and the court, Judge Chambers, in granting the motion held that infant's diagnosis of global developmental delay was newly discovered evidence that entitled plaintiff to recover damages in excess of her administrative claim.

As the evidence will show, regardless of which standard is applied, Plaintiff is entitled to increase the amount of the claim he is seeking in this matter and/or recover an amount in excess of the original Administrative Claim.

While the requirement that a claimant must set forth a sum certain in the Administrative Claim which "might provide some semblance of certainty and be helpful in evaluating most claims…it would achieve very little justice in those cases where additional facts subsequently discovered indicate greater damages had been sustained than originally contemplated." *Joyce v. United States*, 329 F.Supp. 1242, 1247 (W.D. Pa. 1971). "A rule that would require plaintiff to know the full extent of his injuries when they are such that medical science cannot immediately establish them is neither logical or practical." *Id.*

8

In *Michaels v. United States of America*, 815 F.Supp 1244 (S.D. Iowa 1993), a plaintiff in a federal tort claim action sought to amend the amount of damages being sought because of newly discovered evidence. The United States District Court for the Southern District of Iowa conducted an extensive analysis of what constitutes newly discovered evidence under the more liberal standard adopted by the Eleventh and Fourth Circuit Court of Appeals (the new evidence "had not been" discovered by the time the claim was filed) versus the more restrictive standard adopted by the First Circuit (the new evidence could not have been "reasonably" discovered at the time of the original claim). The *Michaels* Court adopted the standard for newly discovered evidence of the Eleventh and Fourth Circuits. This case is important because it explains the rationale as to why the more liberal standard should be used.

The *Michaels* Court declared:

> [a] substantial policy consideration leads the Court to conclude that the approach followed by the Eleventh Circuit is preferable to that of the First Circuit. The Eleventh Circuit standard is more likely to advance settlement of claims than that forwarded by the First Circuit. A plaintiff under the Eleventh Circuit approach will more likely assert claims based on injuries that are current and assessable. Current claims based on probable future damages facilitate evaluation because they are neither as intricate nor as complex as those typically associated with contingent future damage claims. Thus, the government is placed in a better position to decide whether to settle a specific claim based on current diagnosis. Under the worst case scenario method of the First Circuit, the plaintiff must assert all his or her claims for damages, no matter how remote or distant the possibility that those damage claims will come to fruition, or run the risk that he or she will be barred from asserting them in a subsequent FTCA action. Because of the bloated nature of such claim, the government is forced to shift through plaintiff's damage claims in order to assess the current state of plaintiff's damages and the probability of future consequences before any real settlement negotiations may occur. Settlement is also facilitated by the Eleventh Circuit standard because the parties are in general equipoise in negotiating position. If the government delays settlement and the plaintiff experiences an unexpected increase in the severity of his or her injuries, the government may be held liable for

9

>the respective increase in damages. Thus, even though prejudgment interest may not be awarded against a government pursuant to 28 U.S.C. §2674, the government has no incentive to delay settlements with plaintiffs. Therefore, the Eleventh Circuit approach is in keeping with and facilitates the fundamental purpose of the FTCA tort claim requirement of §2675, which is "to ease congestion and avoid unnecessary litigation, while making it possible for the government to expedite the fair settlement of tort claims asserting against the United States.

"Considerable discretion is vested in the District Courts to determine what constitutes newly discovered evidence not reasonably discoverable at the time the claim was presented." *Powers v. United States*, 589 F.Supp. 1084, 1110 (D.C. Conn. 1984), citing *Nichols v. United States*, 147 F.Supp. 6, 9 (E.D. Va. 1957). "[W]hen a plaintiff does not know fully the medical extent of his injuries and expenses at the time of his administrative complaint, the exceptions to §2675(b) are triggered." Even in the face of general knowledge regarding a condition, substantial increase in or complication of such an injury will amount to newly discovered evidence. "[I]n determining whether the exception [for newly discovered evidence] is available, claimants will not be held to a standard that charges them with knowing what the doctors could not tell [them]." *Milano v. United States*, 92 F.Supp.2d 769 (N.D. Ill. 2000), citing *Frasier v. United States,* 766 F.2d 478, 481 (11th Cir. 1985).

### *Conclusion*

Plaintiff has filed expert disclosures in this matter and reports from Ronald Long, MD, (Attachments O and P), Daniel L. Selby, MBA, CPA, CFF, CVA (Attachment Q) and Daniel C. Baierl, MS, ABVE-F, CLCP, ABDE-D (Attachment R)..

Those reports attached hereto disclose not only the nature and extent of his condition but the effect in monetary terms upon Michael Giambalvo who will suffer loses in amounts reduced to present value of income capacity over his life in the amount

of $152,422 to $87,688, and that his future medical care costs will be $1,176,359. In addition to these sums, Plaintiff will be seeking to recover non-economic damages in the maximum amount permitted under the West Virginia Medical Professional Liability Act (MLPA) W. Va. Code Ann. § 55-7B-8(b) and, which is currently in excess of $600,000 based upon inflationary adjustments required in the statute.

Wherefore, Plaintiff requests that the Court permit Plaintiff to amend the Administrative Claim filed in this matter to $5,000,000.00 or alternatively, permit recovery up to $5,000,000.00 in this litigation.

Respectfully submitted,

/s/Jay T. McCamic
Jay T. McCamic
WV Bar #2386
McCamic, Sacco & McCoid, PLLC
56-58 Fourteenth Street
P.O. Box 151
Wheeling, WV 26003
p: (304) 232-6750
f: (304) 232-3548
jtmccamic@mspmlaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>November 19, 2014</u>, I electronically filed PLAINTIFF'S MOTION TO INCREASE *PRO SE* ADMINISTRATIVE CLAIM AMOUNT FILED AGAINST THE UNITED STATES OF AMERICA OR PERMIT RECOVERY IN EXCESS OF *PRO SE* ADMINISTRATIVE CLAIM with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Alan G. McGonigal
>Assistant U.S. Attorney
>P.O. Box 591
>Wheeling, WV 26003
>alan.mcgonigal@usdoj.gov
>
>Erin K. Reisenweber
>Assistant U.S. Attorney
>217 West King Street, Suite 400
>Martinsburg, WV 25401
>erin.reisenweber@usdoj.gov
>
>
>*/s/Jay T. McCamic*
>Jay T. McCamic
>WV Bar #2386
>McCamic, Sacco & McCoid, PLLC
>56-58 Fourteenth Street
>P.O. Box 151
>Wheeling, WV 26003
>p: (304) 232-6750
>f: (304) 232-3548
>jtmccamic@mspmlaw.com